# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF NEW YORK
### SYRACUSE DIVISION

| | | |
|---|---|---|
| **ROCHELLE HUBBS** and<br>**WALTER HUBBS** | ) | Case No.:    5:26-cv-13 (GTS/TWD) |
| | ) | |
| Plaintiffs, | ) | **Jury Trial Demanded** |
| | ) | |
| v. | ) | |
| | ) | |
| **UNIVERSE COMPANIES, INC.** | ) | |
| **(d/b/a Mattress Express)** and | ) | |
| **TD BANK, N.A. (d/b/a TD Bank** | ) | |
| **Retail Card Services, d/b/a AVB),** | ) | |

Defendants,

## COMPLAINT

Plaintiff Rochelle Hubbs ("Mrs. Hubbs") and Walter Hubbs ("Mr. Hubbs")

brings this action against Defendants **UNIVERSE COMPANIES, INC. (d/b/a Mattress**

**Express)** ("Mattress Express") and **TD BANK, N.A. (d/b/a TD Bank Retail Card**

**Services, d/b/a AVB)** ("TD/AVB") and allege as follows:

### WHAT IS THIS CASE ABOUT?

1.     A retired Cayuga County couple say a local mattress store and a national bank

teamed up to trap them in a five-figure debt for a luxury bed that never crossed

**DOMBROW LAW FIRM**
499 South Warren Street, Suite 405, Syracuse, New York 13202 – 2609
Telephone: (315) 409 – 7709 / Text: (315) 299 – 3535
www.DombrowLawFirm.com

their threshold, leaving them sleepless with fear, stress, and anxiety over a bill they do not owe.

2.    **What Happened?** Rochelle and Walter Hubbs allege that Mattress Express in Auburn used high-pressure tactics to lock them into a supposedly "All Sales Final" purchase of a flex-head queen mattress set and add-ons costing 14,460.01 dollars, all financed through a TD Bank/AVB credit line pushed on them in the store.

3.    Within about twenty minutes, the salesman called to admit the mattress could not be delivered when promised, and over the next days the Hubbs repeatedly told Mattress Express in person, by text, and by email that they were "not moving forward," returned unopened accessories, and unequivocally canceled and refused delivery.

4.    **The Undelivered Mattress, The Live Charge.** The complaint alleges that despite multiple clear cancellations and written refusals to accept delivery, Mattress Express continued to badger the Hubbs with texts, emails, and an automated delivery call, then caused the full 14,460.01-dollar charge to be submitted as if the goods had been delivered and accepted.

DOMBROW LAW FIRM
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE: (315) 409 – 7709 / TEXT: (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

5.    The Hubbs say they never received any mattress, base, or accessories at all, yet a TD/AVB billing statement in **May 2025** suddenly showed the entire 14,460.01-dollar charge posted to their account- more than a month after they had closed that account at a zero balance.

6.    **TD/AVB's Role.** TD Bank/AVB admitted on the phone that the account had been closed with no pending charges and that it failed to put a block on the closed account, a lapse that let Mattress Express "force through" the massive charge anyway.

7.    The Hubbs immediately disputed the charge, submitted a written Declaration of Fraudulent Activity swearing that no goods were ever received, and invoked their federal billing-error rights, but TD/AVB allegedly sided with the merchant based on a signed receipt and supposed "delivery confirmation" while ignoring the couple's evidence of cancellation, non-delivery, and account closure.

8.    **The Legal Claims.** The lawsuit claims TD/AVB violated the Fair Credit Billing Act and Regulation Z by mishandling a classic "undelivered goods" billing error: failing to timely acknowledge the written notice, failing to reasonably investigate, treating the disputed amount as due, and threatening or making adverse credit reporting on the bogus balance.

**DOMBROW LAW FIRM**
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE: (315) 409 – 7709 / TEXT: (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

9.    Mattress Express and TD/AVB are also accused of deceptive and abusive

practices under New York General Business Law § 349 and state contract law,

including using "All Sales Final" language to intimidate consumers,

misrepresenting delivery and follow-up calls, and coordinating to collect on an

obligation for merchandise that never entered the Hubbs' home.

10.    **Harm To the Hubbs.** The complaint alleges that, as a direct result of this

conduct, the Hubbs have been wrongfully billed for over 14,000 dollars, exposed

to interest, fees, and damage or risk to their credit reputation, and left to fear

collection and lawsuit over a debt for goods they never received.

11.    The complaint emphasizes that the ongoing threat of a large, illegitimate balance-

backed by a national bank and a determined retailer- has caused them severe

stress, anxiety, and emotional distress, effectively turning a simple mattress

purchase into a months-long ordeal hanging over every aspect of their financial

and emotional lives.

## JURISDICTION & VENUE

12.    This action arises under federal law, including the Fair Credit Billing Act, 15

U.S.C. § 1666 *et seq.*, and the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*, which

**DOMBROW LAW FIRM**
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE: (315) 409 – 7709 / TEXT: (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

includes the Fair Credit Billing Act, and accordingly this Court has federal question jurisdiction under 28 U.S.C. § 1331.

13.     This Court also has jurisdiction over Plaintiffs' state law claims, including claims under New York General Business Law §§ 349 and 396-u, and New York common law, under 28 U.S.C. § 1367(a), because those claims are so related to Plaintiffs' federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

14.     Defendant TD Bank, N.A. is, on information and belief, a national banking association with its main office located outside the State of New York,

15.     Defendant **UNIVERSE COMPANIES, INC. (d/b/a Mattress Express)** is a New York business entity operating a retail store in Auburn, New York and other locations within New York State.

16.     Venue is proper in the United States District Court for the Northern District of New York under 28 U.S.C. § 1391(b)(1)-(2) because at least one defendant (Mattress Express) resides in this District, and a substantial part of the events or omissions giving rise to the claims- including the alleged execution of the Mattress Express sales contract, Plaintiffs' cancellation and refusal of delivery,

**DOMBROW LAW FIRM**
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE: (315) 409 – 7709 / TEXT: (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

and the posting and dispute of the $14,460.01 charge- occurred in Cayuga County, New York, which lies within this District.

17. Personal jurisdiction over Defendant Mattress Express is proper because it is a New York business entity that transacts business in New York and committed the wrongful acts alleged herein in New York.

18. Personal jurisdiction over Defendant TD Bank, N.A. is proper because it purposefully transacts business with New York residents, extends and services credit accounts used in New York, and directed the challenged billing and credit-reporting conduct into New York with respect to Plaintiffs' account.

## PARTIES

19. **Rochelle Hubbs** ("Mrs. Hubbs") is the Plaintiff, an individual, consumer, and New York State resident.

20. **Walter Hubbs** ("Mr. Hubbs") is also a Plaintiff, an individual, consumer, and New York State resident.

21. Defendant **UNIVERSE COMPANIES, INC. (d/b/a Mattress Express)** ("Mattress Express") is a Domestic Business Corporation residing in Jefferson County, New York.

DOMBROW LAW FIRM
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE: (315) 409 – 7709 / TEXT: (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

22.    Defendant **TD BANK, N.A. (d/b/a TD Bank Retail Card Services, d/b/a AVB)** ("TD/AVB") is a National Bank, incorporated in the State of Delaware and residing in the State of New Jersey.

### FACTUAL ALLEGATIONS APPLICABLE TO ALL CAUSES OF ACTION

23.    Mrs. Hubbs and Mr. Hubbs restate and reallege the all of the above Paragraphs as though fully stated herein.

24.    Plaintiffs Walter and Rochelle Hubbs are hardworking New Yorkers who reside in Cayuga County, New York.

25.    Mattress Express is a high-pressure mattress retailer that operates a store at 360 Grant Avenue, Auburn, New York 13021.

26.    **TD/AVB**, through its AVB-branded credit program, is a large national bank that aggressively issues and services consumer credit accounts, including the AVB credit line forced onto Plaintiffs in this transaction.

27.    On **March 30, 2025**, Mattress Express steered and pressured Plaintiffs into signing a sales receipt claiming an "All Sales Final" purchase and return policy for an expensive flex-head queen mattress, adjustable base, extended warranties, and accessories.

**DOMBROW LAW FIRM**
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE: (315) 409 – 7709 / TEXT: (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

28.     The **March 30, 2025** sale locked Plaintiffs into a grossly inflated $14,460.01 total purchase price.

29.     Mattress Express encouraged Mrs. Hubbs and Mr. Hubbs to finance the entire $14,460.01 purchase through an AVB-branded TD/AVB credit line with no money down.

30.     Plaintiffs were not given a meaningful option to pay cash or discouraged from using more consumer-friendly financing.

31.     **Within approximately twenty minutes of closing this sale**, Salesman Ryan C. called Plaintiffs.

32.     During that call, Ryan C. admitted that Mattress Express could not deliver the goods purchased on the date that had been promised in the store.

33.     This immediate failure to honor the promised delivery date exposed Mattress Express's disregard for its own representations.

34.     Plaintiffs promptly sought to return to the store to address what they reasonably viewed as a bait-and-switch.

35.     Mattress Express delayed this meeting until **April 2, 2025**, showing little concern for the serious impact of its broken promises.

**DOMBROW LAW FIRM**
499 South Warren Street, Suite 405, Syracuse, New York 13202 – 2609
Telephone: (315) 409 – 7709 / Text: (315) 299 – 3535
www.DombrowLawFirm.com

36.    On **April 2, 2025**, Plaintiffs returned to Mattress Express's Auburn store

specifically to undo this problematic transaction.

37.    On **April 2, 2025**, Plaintiffs told Ryan C. they were unhappy with the changed

delivery and the undisclosed and confusing add-on costs.

38.    On **April 2, 2025**, Plaintiffs returned unopened sheets and pillows they intended

to use with the mattress before Mattress Express ruined their dreams, signaling

their complete lack of confidence in Mattress Express's conduct.

39.    On **April 2, 2025**, Plaintiffs clearly told Ryan C. that they were not moving

forward with the purchase.

40.    Plaintiffs' **April 2, 2025** statements were an unequivocal cancellation of the deal.

41.    Mattress Express chose to ignore that cancellation and instead kept trying to

salvage its sale at Plaintiffs' expense.

42.    On **April 4, 2025**, Ryan C. texted Plaintiffs asking to "chat," thereby re-initiating

pressure despite having been told no.

43.    On **April 4, 2025**, Plaintiffs spoke with Ryan C. and again told him that they

would not move forward with the purchase.

44.    During that call, Plaintiffs repeated their objections to the delivery change and

the unclear and inflated expenses.

**DOMBROW LAW FIRM**
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE: (315) 409 – 7709 / TEXT: (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

45.     Mattress Express responded not by respecting Plaintiffs' decision, but by trying to wear them down.

46.     On **April 4, 2025**, Ryan C. emailed a revised offer with a reduced price and marketed it as a "good happy medium."

47.     That **April 4, 2025** email was a transparent attempt to lure Plaintiffs back into a transaction they had already canceled.

48.     On **April 4, 2025**, Plaintiff Rochelle emailed back and stated that Plaintiffs were not moving forward with the purchase.

49.     At this point, Mattress Express had been told at least three separate times that the sale was dead.

50.     Rather than accept this, Mattress Express escalated its tactics and resorted to different misrepresentations.

51.     On **April 7, 2025**, Ryan C. texted Rochelle claiming that his Regional Director "Josh" had tried to contact her "a couple of times."

52.     In the same **April 7, 2025** text, Ryan C. provided a phone number for this supposed Regional Director at Mattress Express.

53.     Verizon phone records show that there were no calls from that number to Plaintiffs' phone at any time.

**DOMBROW LAW FIRM**
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE: (315) 409 – 7709 / TEXT: (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

54.    These phone records prove that Ryan C.'s claim that "Josh" tried to call was false.

55.    On **April 7, 2025**, Ryan C. sent a second text again pushing the Regional Director's phone number.

56.    Mattress Express's repeated references to a Regional Director who never called were a deliberate intimidation tactic.

57.    Plaintiffs refused to engage with this charade and did not respond to the **April 7, 2025** texts.

58.    Also on **April 7, 2025**, Plaintiffs received the TD/AVB credit card in the mail, which was the financing tool Mattress Express had tied to this sale.

59.    Plaintiffs immediately called TD/AVB because they wanted nothing further to do with the Mattress Express financing.

60.    TD/AVB told Plaintiffs that the credit account had a zero-dollar balance.

61.    TD/AVB told Plaintiffs that there were no pending charges on the account.

62.    On **April 7, 2025**, Plaintiffs closed the credit account after confirming that no charges were pending.

63.    Plaintiffs reasonably believed that closing the account with no pending charges would block Mattress Express from ever posting a charge.

**DOMBROW LAW FIRM**
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE: (315) 409 – 7709 / TEXT: (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

64.    However, Mattress Express and TD/AVB later exploited the lack of a block to

force through the massive $14,460.01 charge anyway.

65.    On **April 8, 2025**, Plaintiffs received an automated call from Mattress Express

announcing a delivery window.

66.    The **April 8, 2025** automated call stated that the mattress would be delivered

between 10:00 a.m. and 12:00 p.m.

67.    Ryan C. did not bother to call personally before attempting this unwanted

delivery.

68.    Mattress Express proceeded as if Plaintiffs' clear cancellations did not exist and

tried to push the goods on them anyway.

69.    On **April 8, 2025**, Plaintiff Rochelle texted Ryan C. in response to the automated

delivery call.

70.    In that **April 8, 2025** text, Rochelle told Ryan that Plaintiffs would not accept

delivery.

71.    In that **April 8, 2025** text, Rochelle told Ryan that Plaintiffs no longer wanted the

product.

72.    By that point, Mattress Express had absolutely no legitimate basis to treat this

sale as active.

**DOMBROW LAW FIRM**
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE: (315) 409 – 7709 / TEXT: (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

73. Nevertheless, on **April 9, 2025**, Ryan C. texted again saying he had been discussing the matter with the Regional Director and wanted to talk further.

74. Plaintiffs viewed this as relentless badgering and refused to respond.

75. On **April 10, 2025**, Ryan C. sent another text saying he had not heard from Rochelle and wished to talk.

76. Plaintiffs ignored that message as well.

77. On **April 11, 2025**, Ryan C. sent yet another text asking to talk.

78. Plaintiffs refused to reply to the **April 11, 2025** text because they were done being harassed.

79. On **April 16, 2025**, Ryan C. emailed Rochelle again.

80. In that **April 16, 2025** email, Ryan repeated the false claim that the Regional Director had tried to contact Mrs. Hubbs.

81. In that email, Ryan touted "best pricing" and pushed Plaintiffs to contact him as if a better deal could resurrect the canceled sale.

82. Plaintiffs did not respond to the **April 16, 2025** email.

83. Ryan C. was acting as an agent for Mattress Express when he sold the mattress to Mrs. Hubbs and Mr. Hubbs, subsequently backtracked on the commitment to

**DOMBROW LAW FIRM**
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE: (315) 409 – 7709 / TEXT: (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

deliver the goods on the promised date, and tried to intimidate the Hubbs' into continuing with the transaction.

84. Plaintiffs never accepted delivery of any mattress, adjustable base, or other goods from Mattress Express.

85. Plaintiffs never received any of the merchandise listed on the **March 30, 2025** sales receipt.

86. Mattress Express knew or should have known that no goods had been delivered to Plaintiffs.

87. Mattress Express knew that Plaintiffs had canceled and refused delivery on multiple dates.

88. In spite of this, Mattress Express chose to seek full payment as though everything had been delivered and accepted.

89. On **May 14, 2025**, Plaintiffs received a TD/AVB billing statement.

90. The **May 14, 2025** statement showed a new charge of $14,460.01 posted on **May 14, 2025**.

91. The $14,460.01 charge exactly matched the canceled Mattress Express transaction.

92. The charge was posted more than a month after Plaintiffs had closed the credit account at a zero balance with no pending charges.

**DOMBROW LAW FIRM**
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE: (315) 409 – 7709 / TEXT: (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

93.    On **May 14, 2025**, Plaintiffs immediately called TD/AVB to challenge this

outrageous charge.

94.    TD/AVB representative Wendy confirmed that the TD/AVB account had been

closed on **April 7, 2025**.

95.    Wendy confirmed that there were no pending charges when Plaintiffs closed the

account.

96.    Wendy admitted that TD/AVB had failed to place a block on the closed account.

97.    That failure allowed Mattress Express to force through the massive $14,460.01

charge on the Hubbs' supposedly closed account.

98.    Contemporaneously to that **May 14, 2025** call, Plaintiffs filed a written fraud or

"fraudulent theft" claim concerning the unauthorized $14,460.01 charge.

99.    TD/AVB assigned the claim number C2847244 to this dispute.

100.   In that claim, Plaintiffs told TD/AVB that they had canceled the sale.

101.   In that claim, Plaintiffs told TD/AVB that they had never received any

merchandise at all.

102.   In that claim, Plaintiffs told TD/AVB that the account had been closed at a zero

balance before the charge posted.

**DOMBROW LAW FIRM**
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE: (315) 409 – 7709 / TEXT: (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

103.   On or about **May 30, 2025**, Mr. Hubbs submitted TD/AVB's Declaration of Fraudulent Activity.

104.   In that declaration, Mr. Hubbs swore that neither he nor Mrs. Hubbs participated in or benefited from the $14,460.01 transaction.

105.   In that declaration, Walter swore that the credit account was closed with no pending charges when Mattress Express later pushed the charge through.

106.   TD/AVB therefore had direct, written notice that this was a non-delivery and post-closure billing-error case.

107.   On **June 16, 2025**, TD/AVB sent a letter denying Plaintiffs' fraud claim.

108.   TD/AVB's **June 16, 2025** letter parroted Mattress Express and claimed the merchant had provided a signed sales receipt and/or delivery confirmation.

109.   TD/AVB's **June 16, 2025** letter ignored every fact showing cancellation, non-delivery, and account closure.

110.   TD/AVB chose to believe a self-interested merchant and to disregard its own customers' detailed evidence.

111.   On **June 17, 2025**, TD/AVB sent another letter acknowledging receipt of identity-theft or fraud documentation.

**DOMBROW LAW FIRM**
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE: (315) 409 – 7709 / TEXT: (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

112.    TD/AVB's **June 17, 2025** letter said the investigation was still "ongoing," but it did nothing to correct the account.

113.    TD/AVB refused to reverse or credit the $14,460.01 charge despite the charge's clear status as one for undelivered and refused goods.

114.    TD/AVB continued to treat the $14,460.01 as a valid debt and to demand payment from Plaintiffs.

115.    Mattress Express knowingly caused a charge to be posted for goods that were never delivered and never accepted.

116.    Mattress Express deliberately ignored Plaintiffs' repeated cancellations and refusals in order to extract payment for nothing.

117.    Mattress Express weaponized its "All Sales Final" language in an attempt to override New York law and basic fairness.

118.    Mattress Express's conduct was deceptive, high-pressure, and calculated to overpower Plaintiffs' clear decision to cancel.

119.    Mattress Express's conduct constitutes deceptive acts and practices aimed at consumers at large.

DOMBROW LAW FIRM
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE: (315) 409 – 7709 / TEXT: (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

120. Mattress Express failed to deliver as promised, failed to obtain consent from the Hubbses to any delay, and by seeking payment instead of canceling a clearly refused order.

121. TD/AVB's handling of Plaintiffs' dispute violated the Fair Credit Billing Act and Regulation Z.

122. TD/AVB failed to treat the $14,460.01 unauthorized credit card charge as a billing error for undelivered goods, even though the statute squarely covers that scenario.

123. TD/AVB failed to conduct a reasonable investigation because it accepted Mattress Express's paperwork at face value without verifying actual delivery or acceptance.

124. TD/AVB chose the path of least resistance by siding with the merchant and refusing to protect its own customers from an obvious abuse.

125. TD/AVB failed to comply with the FCBA's strict timelines for acknowledgment and resolution of a written billing-error notice.

126. TD/AVB treated the disputed amount as due, added interest or fees, or threatened collection while the dispute was pending.

**DOMBROW LAW FIRM**
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE: (315) 409 – 7709 / TEXT: (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

127.    TD/AVB reported or threatened to report the disputed balance as delinquent to

at least one consumer reporting agency without properly resolving the billing

error.

128.    The posting of the unauthorized $14,460.01 charge to a closed account with no

pending charges underscores TD/AVB's reckless disregard for its own account

controls.

129.    Mattress Express and TD/AVB acted in concert to saddle Plaintiffs with a

massive debt for goods that never entered Plaintiffs' home.

130.    Both Defendants showed callous indifference to Plaintiffs' rights and to the basic

requirement that a consumer should not pay for undelivered merchandise.

131.    As a direct result of Defendants' conduct, Plaintiffs have been wrongfully billed

$14,460.01, exposed to a large bogus balance, and subjected to severe stress and

anxiety.

132.    Defendants' conduct violated New York contract law, New York General

Business Law § 349, the FTC Mail/Internet Order Rule, and the Fair Credit Billing

Act.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### *(Violation of the Fair Credit Billing Act and Regulation Z-*

**DOMBROW LAW FIRM**
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE:  (315) 409 – 7709 / TEXT:  (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

*Against TD/AVB Only)*

133.    Mrs. Hubbs and Mr. Hubbs restate and reallege the all of the above Paragraphs as though fully stated herein.

134.    TD/AVB is a "creditor" and "card issuer" within the meaning of the Truth in Lending Act and its implementing Regulation Z because it extends consumer credit under an open-end credit plan and issues credit cards, including the TD/AVB credit account used in Plaintiffs' transaction.

135.    Plaintiffs are "obligors" and "cardholders" on the TD/AVB credit card account within the meaning of the Fair Credit Billing Act and Regulation Z.

136.    The TD/AVB account used to finance the Mattress Express transaction is an "open-end credit" plan for personal, family, or household purposes within the meaning of 15 U.S.C. § 1602 and 12 C.F.R. § 1026.2.

137.    On **May 14, 2025**, AVB/AVB issued a periodic billing statement for Plaintiffs' AVB account.

138.    The **May 14, 2025** billing statement reflected a new charge of $14,460.01 posted on **May 14, 2025**.

139.    The $14,460.01 charge corresponded to a purported Mattress Express sale dated **March 30, 2025**.

**DOMBROW LAW FIRM**
499 South Warren Street, Suite 405, Syracuse, New York 13202 – 2609
Telephone: (315) 409 – 7709 / Text: (315) 299 – 3535
www.DombrowLawFirm.com

140.    Plaintiffs canceled the Mattress Express sale on **April 2, 2025**.

141.    Plaintiffs had refused any delivery of the Mattress Express merchandise by **April 8, 2025**.

142.    No mattress, adjustable base, or related goods were ever delivered to or accepted by Plaintiffs.

143.    TD/AVB therefore extended credit for property and services "not accepted by the obligor or his designee, or not delivered to the obligor or his designee as agreed," which constitutes a "billing error" under 15 U.S.C. § 1666(b)(3) and 12 C.F.R. § 1026.13(a)(3).

144.    On **May 14, 2025**, after receiving the billing statement, Plaintiffs telephoned TD/AVB and disputed the $14,460.01 charge.

145.    On or about **May 30, 2025**, Plaintiffs submitted TD/AVB's written "Declaration of Fraudulent Activity" disputing the unauthorized $14,460.01 charge.

146.    In that written declaration, Plaintiffs identified the TD/AVB account, identified the disputed charge, stated that they had canceled the Mattress Express transaction, stated that no merchandise had been delivered, and stated that the account had been closed at a zero balance with no pending charges when the charge later posted.

**DOMBROW LAW FIRM**
499 South Warren Street, Suite 405, Syracuse, New York 13202 – 2609
Telephone: (315) 409 – 7709 / Text: (315) 299 – 3535
www.DombrowLawFirm.com

147.  Plaintiffs' written declaration constituted a timely "billing error notice" within the meaning of 15 U.S.C. § 1666(a) and 12 C.F.R. § 1026.13(b) because it was sent within 60 days after TD/AVB transmitted the first statement containing the disputed charge and it reasonably identified the name and account number, the amount in dispute, and the reasons for the belief that a billing error existed.

148.  Under 15 U.S.C. § 1666(a) and 12 C.F.R. § 1026.13(c), TD/AVB was required to send Plaintiffs a written acknowledgment of their billing-error notice within thirty days after receiving it.

149.  TD/AVB failed to send Plaintiffs a written acknowledgment of their billing-error notice within thirty days of receipt.

150.  Under 15 U.S.C. § 1666(a) and 12 C.F.R. § 1026.13(c)–(f), TD/AVB was required to conduct a reasonable investigation of Plaintiffs' billing-error claim, determine whether a billing error occurred, and either correct the account or send a written explanation of its findings within two complete billing cycles, but in no event later than ninety days.

151.  In any investigation of a billing error involving undelivered goods or services, TD/AVB was required by Regulation Z and its Official Interpretations to determine whether the property or services were actually delivered or mailed as

**DOMBROW LAW FIRM**
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE: (315) 409 – 7709 / TEXT: (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

agreed and to base its decision on information from both the merchant and the cardholder.

152.  TD/AVB failed to conduct a reasonable investigation of Plaintiffs' billing-error claim because it relied primarily or exclusively on a signed sales receipt and/or purported delivery confirmation from Mattress Express and did not verify whether any goods were actually delivered to, or accepted by, Plaintiffs.

153.  TD/AVB failed to conduct a reasonable investigation because it ignored or disregarded Plaintiffs' written statements and supporting evidence that the transaction had been canceled, that Plaintiffs had refused delivery, and that no goods were ever received.

154.  On **June 16, 2025**, TD/AVB sent Plaintiffs a letter denying their dispute and asserting that the merchant had provided a signed sales receipt and/or delivery confirmation.

155.  The **June 16, 2025** denial letter did not explain any investigation into Plaintiffs' non-delivery allegations and did not provide documentary evidence showing that any merchandise was delivered or accepted.

156.  TD/AVB's investigation and denial were unreasonable under 15 U.S.C. § 1666(a) and 12 C.F.R. § 1026.13(f) because TD/AVB failed to determine whether the

**DOMBROW LAW FIRM**
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE: (315) 409 – 7709 / TEXT: (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

property was actually delivered as agreed and failed to make an independent

assessment based on both merchant and cardholder information.

157.    Under 15 U.S.C. § 1666(a)(3) and 12 C.F.R. § 1026.13(d), after receiving a proper

billing-error notice, TD/AVB was prohibited from treating the disputed amount

as "delinquent" or taking any action to collect the disputed amount or related

charges until it completed its investigation and complied with the

error-resolution procedures.

158.    To the extent TD/AVB demanded payment of the disputed $14,460.01, assessed

finance charges or late fees on that amount, or otherwise sought to collect the

disputed amount prior to completing a reasonable investigation and proper

written explanation, TD/AVB violated 15 U.S.C. § 1666(a)(3) and 12 C.F.R. §

1026.13(d).

159.    Under 15 U.S.C. § 1666a and 12 C.F.R. § 1026.13(g), TD/AVB was prohibited from

making an adverse credit report about the disputed amount based on Plaintiffs'

failure to pay that amount while the billing-error claim was pending and was

required, after resolution, to report the amount as disputed if Plaintiffs so

notified it in writing.

**DOMBROW LAW FIRM**
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE: (315) 409 – 7709 / TEXT: (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

160. To the extent TD/AVB reported or threatened to report the disputed amount as delinquent to at least one (1) consumer reporting agency without properly resolving the billing error and without complying with the notice and "disputed" reporting requirements, TD/AVB further violated the Fair Credit Billing Act and Regulation Z.

161. Under the Official Interpretations to Regulation Z § 1026.13 and the Federal Reserve Board's **2009** commentary, if a creditor fails to complete a reasonable investigation and to provide a proper written explanation in a billing-error case, the creditor must generally credit the disputed amount and related finance charges to the consumer's account.

162. TD/AVB failed to credit the $14,460.01 disputed amount and related charges to Plaintiffs' account, even though it did not perform a reasonable investigation and even though it failed to substantiate that any goods were delivered or accepted.

163. By failing to timely acknowledge Plaintiffs' billing-error notice, by failing to conduct a reasonable investigation, by failing to determine whether the goods were delivered as agreed, by failing to credit the disputed amount, and by attempting to collect and enforce the disputed charge, TD/AVB violated the Fair Credit Billing Act, 15 U.S.C. § 1666 *et seq.*, and Regulation Z, 12 C.F.R. § 1026.13.

DOMBROW LAW FIRM
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE: (315) 409 – 7709 / TEXT: (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

164.    The Fair Credit Billing Act is enforced through the Truth in Lending Act's civil liability provision, 15 U.S.C. § 1640, which provides that any creditor who fails to comply with any requirement imposed under 15 U.S.C. § 1666 is liable to the consumer for actual damages, statutory damages, costs, and reasonable attorney's fees.

165.    As a direct and proximate result of TD/AVB's violations of the Fair Credit Billing Act and Regulation Z, Plaintiffs have suffered actual damages, including but not limited to the existence of a $14,460.01 disputed balance, any associated finance charges and fees, damage or risk to their credit reputation, and emotional distress and anxiety related to being wrongfully billed and pursued for a debt for undelivered goods.

166.    Plaintiffs are entitled to recover their actual damages, statutory damages, the costs of this action, and reasonable attorney's fees from TD/AVB under 15 U.S.C. § 1640(a) for TD/AVB's violations of the Fair Credit Billing Act and Regulation Z.

### SECOND CAUSE OF ACTION
*(Violation of New York General Business Law § 349-*
*Against Mattress Express)*

167.    Mrs. Hubbs and Mr. Hubbs restate and reallege the all of the above Paragraphs as though fully stated herein.

**DOMBROW LAW FIRM**
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE: (315) 409 – 7709 / TEXT: (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

168.   Mattress Express is engaged in the business of selling mattresses, adjustable

bases, bedding, and related consumer goods to the general public in New York

State.

169.   Mattress Express regularly markets and sells its products to ordinary retail

consumers, including Plaintiffs, through in-store sales and related financing

arrangements.

170.   Mattress Express's conduct toward Plaintiffs as alleged herein was part of its

standard sales and financing practices and was not a one-off, bespoke transaction

unique to Plaintiffs.

171.   Mattress Express's challenged acts and practices are "consumer-oriented" within

the meaning of General Business Law § 349 because they are directed at the

consuming public at large and have a broad impact on similarly situated

consumers, not just on Plaintiffs.

172.   Mattress Express represented to Plaintiffs at the **March 30, 2025** point of sale that

it would deliver the purchased mattress and related goods as promised and that

financing through AVB/TD/AVB was an appropriate and routine method for

consumers to pay for such goods.

**DOMBROW LAW FIRM**
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE: (315) 409 – 7709 / TEXT: (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

173.    Immediately after closing the sale, Mattress Express, through its salesperson

Ryan C., told Plaintiffs that it could not deliver the goods on the promised date,

even though Mattress Express did not disclose at the time of sale that delivery

was uncertain or contingent.

174.    Mattress Express used an "All Sales Final" purchase and return policy that, on its

face, purports to bar any cancellations or refunds "under any circumstances,"

even when goods are never delivered.

175.    Mattress Express failed to disclose and affirmatively obscured the fact that,

notwithstanding its "All Sales Final" language, consumers remain protected by

New York law and federal law when goods are not delivered as agreed.

176.    Mattress Express's use of the "All Sales Final" language, in combination with its

failure to deliver and its insistence on full payment, was likely to mislead a

reasonable consumer into believing that they had no right to cancel or withhold

payment even for undelivered goods.

177.    After Plaintiffs returned to the store on **April 2, 2025**, returned accessories, and

clearly stated that they were "not moving forward" with the purchase, Mattress

Express continued to treat the transaction as active and binding.

**DOMBROW LAW FIRM**
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE: (315) 409 – 7709 / TEXT: (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

178.  Mattress Express sent repeated texts and emails after **April 2, 2025** attempting to renegotiate price and revive the canceled transaction, while never acknowledging that Plaintiffs had the right to cancel after nondelivery.

179.  On **April 7, 2025**, Mattress Express, through Ryan C., falsely told Plaintiff Rochelle that a regional director named "Josh" had tried to contact her "a couple of times," even though Plaintiffs' Verizon phone records show no such calls.

180.  Mattress Express repeated this false Regional Director narrative in later messages to pressure Plaintiffs into further discussions and to create the misleading impression of escalating corporate attention and urgency.

181.  These false statements concerning calls from a Regional Director were likely to mislead a reasonable consumer into believing that Mattress Express had made good-faith efforts to resolve the matter and that the consumer was obligated to respond and negotiate rather than stand on a cancellation.

182.  On **April 8, 2025**, after multiple explicit cancellations, Mattress Express caused an automated call to be placed announcing a delivery window for the mattress, thereby acting as if no cancellation had ever occurred.

**DOMBROW LAW FIRM**
499 South Warren Street, Suite 405, Syracuse, New York 13202 – 2609
Telephone: (315) 409 – 7709 / Text: (315) 299 – 3535
www.DombrowLawFirm.com

183.   Mattress Express persisted with this delivery attempt even after Mrs. Hubbs

texted on **April 8, 2025** that Plaintiffs would not accept delivery and no longer

wanted the product.

184.   Mattress Express's conduct created the materially misleading impression that

Plaintiffs were still bound to accept delivery and pay for the goods despite their

prior cancellation and refusal.

185.   Mattress Express coordinated with AVB/TD/AVB to submit a $14,460.01 charge

to Plaintiffs' AVB account in **May 2025**, even though Mattress Express knew

Plaintiffs had canceled their purchase, had refused delivery, and had never

received any goods.

186.   Mattress Express's act of causing a full charge to be posted for undelivered goods

was a deceptive act or practice because it falsely represented that Plaintiffs owed

payment for merchandise they never received or accepted.

187.   Mattress Express intended that TD/AVB rely on its sales documentation and any

purported "delivery confirmation" to enforce collection against Plaintiffs, and it

intended that Plaintiffs be misled into believing they had no recourse due to the

"All Sales Final" language.

**DOMBROW LAW FIRM**
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE: (315) 409 – 7709 / TEXT: (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

188.    Mattress Express's practices, including the use of non-negotiable "All Sales Final" language, misrepresentations about delivery and corporate follow-up, and the submission of charges for undelivered goods, are the type of recurring conduct that can affect many Mattress Express customers and not just Plaintiffs.

189.    Under the objective standard set forth in *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, a reasonable consumer in Plaintiffs' position could be misled by Mattress Express's conduct, believing that they had no right to cancel and no right to refuse payment for goods never delivered.

190.    Plaintiffs reasonably relied on Mattress Express's misleading statements and omissions in navigating the transaction, including the initial agreement to finance through TD/AVB and the subsequent belief that their only recourse was to contest the charge with the bank.

191.    Mattress Express's deceptive acts and practices were a direct and proximate cause of Plaintiffs' injuries, including the posting of a $14,460.01 charge for undelivered goods, the existence of a large, disputed balance on their credit account, the time and expense required to contest the transaction, and emotional distress and anxiety associated with being pursued for a debt for goods they never received.

**DOMBROW LAW FIRM**
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE: (315) 409 – 7709 / TEXT: (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

192.    Plaintiffs have suffered actual damages within the meaning of General Business Law § 349(h), including but not limited to exposure to a $14,460.01 obligation for undelivered goods, potential finance charges and fees, and consequential harms arising from Mattress Express's deceptive business practices.

193.    Mattress Express's conduct, as alleged above, constitutes "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service" in violation of General Business Law § 349(a).

194.    Under General Business Law § 349(h) and *Oswego Laborers* and its progeny, Plaintiffs are entitled to recover their actual damages or fifty dollars, whichever is greater, and the court in its discretion may increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars because Mattress Express willfully and knowingly violated § 349.

195.    Plaintiffs are also entitled to recover reasonable attorney fees and costs from Mattress Express under General Business Law § 349(h).

## THIRD CAUSE OF ACTION
*(Violation of New York General Business Law § 349- Against TD/AVB)*

196.    Mrs. Hubbs and Mr. Hubbs restate and reallege the all of the above Paragraphs as though fully stated herein.

**DOMBROW LAW FIRM**
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE: (315) 409 – 7709 / TEXT: (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

197.    TD/AVB, including its AVB-branded credit program, is in the business of marketing, issuing, and servicing consumer credit card accounts and open-end credit plans to the general public.

198.    TD/AVB's credit-card marketing, account-servicing, and dispute-handling practices, including those challenged in this action, are standardized practices that TD/AVB uses with large numbers of cardholders and are not unique to Plaintiffs.

199.    TD/AVB's conduct toward Plaintiffs as alleged herein is "consumer-oriented" within the meaning of General Business Law § 349 and *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank* because TD/AVB dealt with Plaintiffs in the same way it deals with other ordinary cardholders and because the challenged practices have a broader impact on consumers at large.

200.    TD/AVB represents to consumers, including Plaintiffs, that it complies with federal billing-error rights, that it will reasonably investigate disputes about fraudulent or erroneous charges, and that it will not hold cardholders liable for charges on closed accounts when no goods are received.

**DOMBROW LAW FIRM**
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE: (315) 409 – 7709 / TEXT: (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

201.    TD/AVB's account documentation, fraud-dispute forms, and customer-service scripts are intended for and used with the general consumer marketplace and are not the product of a unique, privately negotiated contract.

202.    Despite these representations, TD/AVB maintains and applies internal policies and practices under which it routinely denies consumer disputes based solely or primarily on merchants' submissions of signed receipts or purported delivery confirmations, without conducting the reasonable investigations it represents it will perform.

203.    TD/AVB holds itself out as accepting and processing "fraud" and "billing-error" claims but, in practice, it imposes undisclosed and onerous hurdles, discounts or ignores consumer evidence, and systematically sides with merchants in non-delivery disputes, in a manner likely to mislead a reasonable consumer about the value and efficacy of the dispute process.

204.    In Plaintiffs' case, TD/AVB represented through its dispute procedures and forms that if Plaintiffs submitted a timely written dispute explaining that goods were never received and that the account had been closed at a zero balance, TD/AVB would treat the matter as a billing error and would investigate fairly and in good faith.

**DOMBROW LAW FIRM**
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE: (315) 409 – 7709 / TEXT: (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

205.   Plaintiffs completed TD/AVB's required processes, including telephonic dispute initiation and written "Declaration of Fraudulent Activity," in reliance on those representations.

206.   TD/AVB knew or should have known, from the nature of its own credit-card portfolio, that many consumers dispute charges for undelivered goods and that reasonable investigation and neutral weighing of evidence are of critical importance to those consumers.

207.   TD/AVB received Plaintiffs' written billing-error notice in late **May 2025**, which identified the account, the $14,460.01 charge, the prior account closure at a zero balance, the cancellation of the Mattress Express transaction, and the complete absence of any delivery.

208.   TD/AVB nonetheless denied Plaintiffs' dispute on **June 16, 2025**, relying on the mere existence of a signed sales receipt and/or purported delivery confirmation provided by the merchant.

209.   TD/AVB's **June 16, 2025** letter did not state that any independent verification of delivery had occurred and did not address Plaintiffs' repeated assertions that no goods had ever been delivered or accepted.

**DOMBROW LAW FIRM**
499 South Warren Street, Suite 405, Syracuse, New York 13202 – 2609
Telephone:  (315) 409 – 7709 / Text:  (315) 299 – 3535
www.DombrowLawFirm.com

210. TD/AVB's denial, and its broader practice of crediting merchant paperwork over consumer evidence in non-delivery cases, would lead a reasonable consumer to believe that TD/AVB's dispute-resolution process is a meaningful protection when, in fact, it is tilted against consumers and largely illusory in practice.

211. TD/AVB further engaged in deceptive conduct by treating the $14,460.01 as a valid debt on a closed account, even though its own representative admitted that the account had been closed on **April 7, 2025** with no pending charges and no block in place at that time.

212. TD/AVB's conduct created the materially misleading impression that a consumer remains fully liable for a large, post-closure charge even when the account was expressly closed at a zero balance and no goods were ever delivered.

213. TD/AVB failed to disclose to Plaintiffs, and fails to disclose to similarly situated cardholders, that it will accept and enforce merchant charges submitted after an account is closed without implementing basic safeguards or blocks, even when that practice can result in consumers being billed for transactions they reasonably believed could not post.

214. TD/AVB's omissions and practices concerning post-closure charges are likely to mislead a reasonable consumer who believes, as Plaintiffs did, that closing a

**DOMBROW LAW FIRM**
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE: (315) 409 – 7709 / TEXT: (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

zero-balance account eliminates the risk of new merchant charges on that

account.

215.  TD/AVB's conduct here is not a mere "private contract dispute" about the

interpretation of one financing agreement but instead reflects systemic

billing-error and post-closure handling practices that can and do affect

credit-card customers generally.

216.  Under the objective standard articulated in *Oswego Laborers* and subsequent

Court of Appeals decisions, TD/AVB's conduct is materially misleading because

it would deceive a reasonable consumer about the security and fairness of

TD/AVB's credit-card dispute process and the effect of closing a zero-balance

account.

217.  TD/AVB's decision to deny Plaintiffs' dispute based on a signed receipt alone,

while ignoring evidence of non-delivery and account closure, was consistent

with its general practice and would mislead reasonable consumers into believing

that TD/AVB had actually determined that the goods were delivered.

218.  TD/AVB's acts and practices, as described above, occurred in the conduct of

business, trade, or commerce and in the furnishing of credit-card services within

New York State.

**DOMBROW LAW FIRM**
499 South Warren Street, Suite 405, Syracuse, New York 13202 – 2609
Telephone: (315) 409 – 7709 / Text: (315) 299 – 3535
www.DombrowLawFirm.com

219.    TD/AVB's deceptive acts and practices were a direct and proximate cause of

Plaintiffs' injury because, as a result of those acts, Plaintiffs were left with a

$14,460.01 charge and any associated fees on their account for undelivered

goods, were deprived of a fair and meaningful investigation, and were forced to

expend time and resources contesting a debt that should have been written off.

220.    Plaintiffs have suffered actual damages within the meaning of General Business

Law § 349(h), including exposure to and potential liability for a $14,460.01

disputed balance, any finance charges and fees flowing from TD/AVB's refusal to

correct the error, and consequential harms such as emotional distress, anxiety,

and risk to credit reputation.

221.    TD/AVB's deceptive acts and practices, as described above, constitute violations

of General Business Law § 349(a).

222.    TD/AVB's violations of General Business Law § 349 were willful and knowing

because TD/AVB has established internal policies for handling disputes, has

access to authoritative guidance on billing-error obligations, and nonetheless

choose to prioritize merchant documentation over consumer protections,

including in situations where it knew no goods had been delivered.

**DOMBROW LAW FIRM**
499 South Warren Street, Suite 405, Syracuse, New York 13202 – 2609
Telephone: (315) 409 – 7709 / Text: (315) 299 – 3535
www.DombrowLawFirm.com

223.   Under General Business Law § 349(h), Plaintiffs are entitled to recover their actual damages or fifty dollars, whichever is greater, and the Court, in its discretion, may increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars because TD/AVB willfully and knowingly violated § 349.

224.   Plaintiffs are also entitled to recover reasonable attorney fees and costs from TD/AVB under General Business Law § 349(h).

## FOURTH CAUSE OF ACTION
*(Violation of New York General Business Law § 396-u*
*Against Mattress Express)*

225.   Mrs. Hubbs and Mr. Hubbs restate and reallege the all of the above Paragraphs as though fully stated herein.

226.   Plaintiffs are "consumers" within the meaning of New York General Business Law § 396-u(1)(a) because they entered into a contract with Defendant Mattress Express, a furniture dealer, for the purchase of furniture- specifically, a flex-head queen mattress, adjustable base, and related bedding- intended to furnish their home.

**DOMBROW LAW FIRM**
499 South Warren Street, Suite 405, Syracuse, New York 13202 – 2609
Telephone: (315) 409 – 7709 / Text: (315) 299 – 3535
www.DombrowLawFirm.com

227. Mattress Express is a "furniture dealer" and "dealer" within the meaning of GBL § 396-u(1)(e) because it is engaged in the business of selling furniture and related household goods from its retail store in Auburn, New York.

228. On or about **March 30, 2025**, Plaintiffs entered into a written sales contract with Mattress Express for the purchase of the above-described mattress, adjustable base, and related items at a total price of 14,460.01 dollars.

229. At the time Mattress Express took Plaintiffs' order on **March 30, 2025**, Mattress Express represented in the store that it would deliver the purchased goods on a specific, promised delivery date, and it is believed and alleged that Mattress Express either (a) failed to conspicuously and in writing disclose on Plaintiffs' copy of the contract an estimated delivery date or range of dates, or (b) failed to honor the latest date stated for delivery as required by GBL § 396-u(2)(a)–(b).

230. Within approximately twenty minutes after closing the sale, Mattress Express's salesperson, acting as Mattress Express's agent, telephoned Plaintiffs and admitted that Mattress Express could not deliver the goods on the promised delivery date that had been represented in the store.

231. Mattress Express did not properly notify Plaintiffs, in compliance with GBL § 396-u(2)(b), of the delay and a revised anticipated delivery date or range of

DOMBROW LAW FIRM
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE: (315) 409 – 7709 / TEXT: (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

delivery dates, nor did it advise Plaintiffs that, upon the expiration of the latest

date stated for delivery in the contract, they would have the statutory options of:

(a) canceling the contract and receiving a full refund; (b) canceling and receiving

a credit equal to any deposit; (c) negotiating a new delivery date or range of

dates; or (d) modifying the contract by selecting different merchandise.

232.    On **April 2, 2025**, after learning that Mattress Express would not deliver on the

promised date and after becoming aware of undisclosed and confusing add-on

costs, Plaintiffs returned to Mattress Express's Auburn store, returned unopened

accessories, and clearly stated that they were "not moving forward" with the

purchase, which constituted a cancellation of the contract within the meaning of

GBL § 396-u(2)(b)–(c).

233.    Plaintiffs repeated their cancellation and refusal to accept delivery multiple times

by text, email, and telephone in the days that followed, including in response to

an automated delivery call on **April 8, 2025**, where Plaintiff Rochelle expressly

told Mattress Express's salesman that Plaintiffs would not accept delivery and no

longer wanted the product.

234.    Despite Plaintiffs' clear cancellation and refusal, Mattress Express failed to honor

Plaintiffs' statutory option to cancel and instead continued to treat the

**DOMBROW LAW FIRM**
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE: (315) 409 – 7709 / TEXT: (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

transaction as active, attempted to force delivery, and ultimately caused the full

contract price of 14,460.01 dollars to be charged through TD/AVB as though the

goods had been delivered and accepted.

235.   Mattress Express further failed, within two weeks of Plaintiffs' cancellation and

demand to undo the transaction, to provide Plaintiffs with any refund or credit,

even though no furniture had been delivered and Plaintiffs had unequivocally

elected to cancel rather than accept delayed delivery, in violation of GBL §

396-u(2)(c)–(d).

236.   No delay in delivery here was caused by a strike or act of God, nor was any

failure or delay in delivery caused solely by Plaintiffs; accordingly, the

exceptions in GBL § 396-u(3)–(4) do not apply.

237.   Mattress Express's failures to (a) comply with the disclosure and delivery-delay

requirements of GBL § 396-u(2)(a)–(b), (b) honor Plaintiffs' election to cancel

under GBL § 396-u(2)(c), and (c) provide a refund or credit within the time

required by GBL § 396-u(2)(d) constitute "unlawful practice[s]" under that

statute.

238.   As a direct and proximate result of Mattress Express's violations of GBL § 396-u,

Plaintiffs have been injured, including but not limited to: exposure to a 14,460.01

**DOMBROW LAW FIRM**
499 South Warren Street, Suite 405, Syracuse, New York 13202 – 2609
Telephone: (315) 409 – 7709 / Text: (315) 299 – 3535
www.DombrowLawFirm.com

dollar obligation for furniture never delivered or accepted, associated finance

charges and fees, the time and expense required to contest the illegitimate

charge, and severe stress and anxiety associated with being pursued for payment

for undelivered merchandise.

239. Under GBL § 396-u(7), Plaintiffs are entitled to recover their actual damages,

treble damages up to the statutory limits, and reasonable attorney's fees and

costs from Mattress Express for these violations.

### PRAYER FOR RELIEF

**WHEREFORE**, Mrs. Hubbs and Mr. Hubbs respectfully request this honorable

Court to grant the following relief:

a) **A JUDGMENT** against Defendant **TD BANK, N.A. (d/b/a TD Bank

Retail Card Services, d/b/a AVB)** for its violation of the Fair Credit Billing

Act (15 U.S.C. § 1666 *et seq.* and Regulation Z), plus prejudgment interest,

postjudgment interest, costs, and disbursements;

b) **A JUDGMENT** against Defendant **MATTRESS EXPRESS** for its violation

of General Business Law § 349, plus prejudgment interest, postjudgment

interest, costs, and disbursements;

**DOMBROW LAW FIRM**
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE: (315) 409 – 7709 / TEXT: (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

c)    **A JUDGMENT** against Defendant **TD BANK, N.A. (d/b/a TD Bank Retail Card Services, d/b/a AVB)** for its violation of General Business Law § 349, plus prejudgment interest, postjudgment interest, costs, and disbursements;

d)    **A JUDGMENT** against Defendant **MATTRESS EXPRESS** for its violation of General Business Law § 396-u, plus prejudgment interest, postjudgment interest, costs, and disbursements;

e)    **ACTUAL DAMAGES** to Mrs. Hubbs and Mr. Hubbs under Federal and New York State law;

f)    **CONSEQUENTIAL DAMAGES** to Mrs. Hubbs and Mr. Hubbs under Federal and New York State law;

g)    **INCIDENTAL DAMAGES** to Mrs. Hubbs and Mr. Hubbs under Federal and New York State law;

h)    **PUNITIVE DAMAGES** to Mrs. Hubbs and Mr. Hubbs for the Defendants' willful violation of General Business Law § 349;

i)    alternatively, **CANCELLATION** of the over $14,000.00 charge on the Plaintiffs' long-closed credit account with Defendant TD/AVB;

**DOMBROW LAW FIRM**
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE: (315) 409 – 7709 / TEXT: (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

j)      **AWARD ATTORNEY'S FEES, COURT COSTS, AND OTHER COSTS**

        **RELATED TO BRINGING THIS COMPLAINT** to Mrs. Hubbs and Mr.

        Hubbs, under applicable law;

k)      **A JURY TRIAL** on all issues so triable; and

l)      **SUCH OTHER RELIEF** as this honorable Court deems just and proper.

        **(Certification and Closing on Following Page)**

**DOMBROW LAW FIRM**
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE:  (315) 409 – 7709 / TEXT:  (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM

## CERTIFICATION AND CLOSING

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

Dated:      Syracuse, New York
              January 6, 2026

/s/ *Russell W. Dombrow*
Russell W. Dombrow, Esquire
NYND Bar No. 516948
*Attorney for Plaintiffs*
**DOMBROW LAW FIRM**
499 South Warren Street, Suite 405
Syracuse, New York 13202
Telephone:   (315) 409-7709
Email:  Russell@DombrowLawFirm.com

**DOMBROW LAW FIRM**
499 SOUTH WARREN STREET, SUITE 405, SYRACUSE, NEW YORK 13202 – 2609
TELEPHONE: (315) 409 – 7709 / TEXT: (315) 299 – 3535
WWW.DOMBROWLAWFIRM.COM